**DHF LAW, P.C.**
Devin H. Fok, Esq. (SBN #256599)
        devin@devinfoklaw.com
234 E. Colorado Blvd., 8th Floor
Pasadena, CA 91101
Ph: (888) 651-6411
Fax: (818) 484-2023

Attorneys for Plaintiffs and the Proposed Class

[*Additional counsels on signature page*]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE, individually, and as a representatives of the class,<br><br>        Plaintiffs,<br><br>    vs.<br><br>FRITO-LAY, INC.; and DOES 1-10 inclusive,<br><br>        Defendants. | CASE NO.: 3:14-CV-00751-HSG<br><br>**MOTION FOR PRELIMINARY APPROVAL**<br><br>Judge:  Hon. Haywood Gilliam, Jr.<br>Courtroom:  15<br><br>Hearing Date: July 28, 2016<br>Time: 2:00 P.M.<br>Location: Courtroom 15, San Francisco |

Now come the Plaintiffs, by and through counsel hereby move the Court pursuant to Federal Rule of Civil Procedure 23 for preliminary approval of the class settlement, certification of a class for the purposes of settlement, and approval of form and manner of notice. The Plaintiff seeks an Order:

1) Conditionally certifying a Settlement Class comprised of the Settlement Class Members;

2) Preliminarily approving the Settlement Agreement and Release;

3) Approving the proposed Notices of Class Action Settlement;

4) Certifying Plaintiff Jane Roe as Class Representatives;

5) Appointing Plaintiff's counsel as Class Counsel; and

6) Appointing a Settlement Administrator;

A memorandum in support is attached hereto and incorporated herein.

Respectfully submitted.

DATED: June 23, 2016            DEVIN H. FOK ESQ.
                               DHF LAW, P.C.

                        By: ___/s/ Devin H. Fok_____
                               Devin H. Fok
                               Attorney for Plaintiff

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................. 1

I. INTRODUCTION ................................................................................ 1

II. PLAINTIFF'S CLAIMS ...................................................................... 2

III. THE LITIGATION AND SETTLEMENT OF THE ACTION .......................... 4

   A. The Previous Claim-In Settlement .................................................. 4

   B. Formal Discovery ........................................................................ 5

IV. THE PROPOSED SETTLEMENT ........................................................ 6

A. Outline of the Settlment ................................................................ 6

B. Class Definition ........................................................................... 8

C. Claims-Paid Class Distribution ....................................................... 9

   C. Attorney's Fees and Expenses and a Service Award to the Class
Representative................................................................................. 10

   *D. Cy Pres Recipient* ..................................................................... 10

V. THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................. 11

   A. Rule 23(a) Requirements ............................................................. 11

   a. Numerosity ............................................................................... 12

   b. Commonality.............................................................................. 12

   c. Typicality ................................................................................. 14

   d. Adequacy of Representation ......................................................... 14

   B. Rule 23(b)(3) Requirements ......................................................... 15

   C. The Proposed Settlement More Than Satisfies the Standard for Preliminary
Approval ........................................................................................ 17

i

a. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations ....................................................................................... 18

b. The Settlement Does Not Grant Preferential Treatment ............................... 18

c. The Settlement Is Adequate and Reasonable ............................................... 19

D. The Court Should Approve Dissemination of the Proposed Class Notice .... 19

VI. CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Amchem Prods., Inc. v. Windsor*
     521 U.S. 591 (June 25, 1997)……………..........................................18, 22

*Ashmus v. Calderon*
     935 F.Supp. 1048 (N.D. Cal. June 4, 1996)……………...........................19

*Barel v. Bank of Am.*
     255 F.R.D. 393 (E.D. Pa. Jan. 16, 2009)……………...............................24

*Caltabiano v. BSB Bank & Trust Co.*
     387 F.Supp.2d 135 (E.D.N.Y. Aug. 8, 2005)……………........................23

*Clark v. Experian Info. Solutions, Inc.*
     2002 U.S.Dist.LEXIS 20410 (D.S.C. June 26, 2002)………….…...........20

*Egge v. Healthspan Services Co.*
     208 F.R.D. 265 (D. Minn. May 16, 2002)……………...............................23

*Gen. Tel. Co. of Sw. v. Falcon*
     457 U.S. 147 (June 14, 1982)……………....................................................21

*Gutierrez v. Wells Fargo Bank, N.A.*
     2008 W.L. 4279550 (N.D. Cal. Sept. 11, 2008)……………......................22

*Hanlon v. Chrysler Corp.*
     150 F.3d 1011, 1022 (9th Cir. June 9, 1998)……………....18, 19, 21, 22, 25

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*
     55 F.3d 768 (3rd Cir. Apr. 17, 1995)……………........................................18

*Jordan v. Los Angeles County*
     669 F.2d 1311 (9th Cir. Feb. 4, 1982)……………......................................19

*Legge v. Nextel Communications, Inc.*
     2004 WL 5235587 (C.D. Cal. June 25, 2004)……………........19, 20, 21, 23

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
     244 F.3d 1152 (9th Cir. Apr. 11, 2001)……………....................................23

*Megallon v. Robert Half Int'l, Inc.*,
     311 F.R.D. 625 (D.Or. Nov. 10, 2015)……………................................ 10, 20

*Macarz v. Transworld Systems, Inc.*
     193 F.R.D. 46 (D. Conn. Apr. 18, 2000)……………..................................23

*Reardon v. ClosetMaid*
     2013 U.S.Dist.LEXIS 169821 (W.D. Pa. Dec. 2, 2013)………… 10, 20, 25

*Riker v. Gibbons*
2010 WL 4366012 (D. Nev. Oct. 28, 2010)…………….........................25
*Rodriguez v. W. Publi'g Corp.*
563 F.3d 948 (9th Cir. Apr. 23, 2009)…………….......................................25
*Singleton v. Domino's Pizza*
976 F.Supp.2d 665 (D. Md. Oct. 2, 2013)…………….....................20, 24
*Wal-Mart Stores, Inc. v. Dukes*
131 S.Ct. 2541 (June 20, 2011)…………….......................................19, 20
*Weber v. Goodman*
9 F.Supp.2d 163 (E.D.N.Y. Apr. 17, 1998)…………….............................23
*White v. Experian Info. Solutions, Inc.*
803 F.Supp.2d 1086 (C.D. Cal. July 15,2011)……………………………..18

**Statutes**

15 U.S.C. §1681b(b)(3)(A)………………………………………………….9, 20
15 U.S.C. §1681n…………………………………………………..…………….11
15 U.S.C. §1681o(a)………………………………………………..…………23, 26
Fed. R. Civ. P. 23(a)………………………………………………………18, 19
Fed. R. Civ. P. 23(a)(1)……………………………………………………...19
Fed. R. Civ. P. 23(a)(2)……………………………………………………...19
Fed. R. Civ. P. 23(b)………………………………………………………...18
Fed. R. Civ. P. 23(b)(3)……………………………………………………22, 23
Fed. R. Civ. P. 23(b)(3)(A)………………………………………………… 23
Fed. R. Civ. P. 23(b)(3)(C)………………………………………………… 24
Fed. R. Civ. P. 23(c)(2)(B)………………………………………………… 27
Fed. R. Civ. P. 23(e)(2)……………………………………………………..9
H.R. Rep. 103-486…………………………………………………………..10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Jane Roe, individually and on behalf of the Settlement Class seek preliminary approval of the proposed Settlement Agreement with Defendant Frito-Lay, Inc. ("Defendant" or "Frito-Lay"). The Settlement Agreement between Plaintiff and Defendant (collectively, the "parties"), if approved, will resolve all claims of the Plaintiffs and all members of the class in exchange for Defendant's agreement to pay $950,000 into a common settlement fund. Declaration of Devin H. Fok ("Fok Decl.") Ex. 4, Stipulation and Settlement of Class Action Claims ("SA"), P.7, ¶II.I. The settlement is a ***claims-paid*** process involving no reversion. SA, P. 7, ¶II.K. The class size is 2,928 members. SA, P. 9, ¶III. This nets each class member approximately $324.45 before deduction for attorney's fees, costs, and class representative's discretionary service award.

The identity of the class members have been identified through formal discovery of electronic records including subpoena to third-parties. Specifically, the databases of Defendant's background screening vendor First Advantage, Inc. ("FADV")[1] and Defendant's applicant tracking system vendor Human Resource Management Center, Inc. ("HRMC") were reviewed and analyzed by Plaintiff's counsel and her retained database expert Mr. Hank Valk. SA, P. 8-9, ¶III. To ensure complete identification of all prospective class members, Defendant has also undertaken to manually review paper-files to determine the class membership of individual applicants not already identified if any. SA, P. 9, ¶III.

The proposed settlement of this action is the product of hard-fought and lengthy arm's-length negotiations by experienced and informed counsel and warrants preliminary approval, as the terms are "fair, reasonable, and adequate." Fed. R. Civ.

---

[1] Formerly Choicepoint. Subsequently acquired by LexisNexis, then Fist Advantage.

P. 23(e)(2). Plaintiff's counsel zealously represented the class and withdrew Plaintiff's first motion for preliminary approval following a dispute of the class size in order to protect the interest of the prospective class. The terms of this settlement were agreed upon only after extensive and hard-fought discovery including multiple involvement of Magistrate Judge Kandis Westmore as well as the filing of a formal motion for class certification. There can be no doubt that Plaintiff's counsel adequately and zealously represented the interest of the class.

## II. **PLAINTIFF'S CLAIMS**

Plaintiff filed her case under a pseudonym, and if requested, will disclose her true name to this Court. She applied for employment with Frito-Lay, Inc. as a full time packer. She alleges, in her First Amended Class Action Complaint ("FAC") that she was denied employment by Defendant on the basis of an employment background report[2] that contained erroneous and derogatory information. FAC ¶¶28, 31. She promptly disputed the information which resulted in the issuance of an accurate and clean report but she was never rehired.

Under the Fair Credit Reporting Act ("FCRA" 15 U.S.C. §1681 *et seq.*), whenever adverse action is contemplated in whole or in part basis of information disclosed in a consumer report, the "user" of the consumer report must provide pre-adverse action notice compliant with 15 U.S.C. §1681b(b)(3)(A). The notice mandated under this requirement is commonly referred to as "pre-adverse action notice." The idea behind this notice is to allow the consumer an opportunity to review and dispute information in a consumer report before the employment opportunity is lost.

_____

[2] They are defined as "consumer reports" under the FCRA. *See* 15 U.S.C. §1681a(d)(1)(B).

Courts have required pre-adverse action notice to be provided within a reasonable time ***prior*** to the taking of adverse action. Generally, adverse action cannot be taken unless 5 business days have elapsed from the date a pre-adverse action notice is ***received. Reardon v. ClosetMaid,*** 2013 U.S. Dist.LEXIS 169821, *43 (W.D. Pa. Dec. 2, 2013) (*"Reardon"*) citing H.R. Rep. 103-486 at 40 (1994) (a "reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumers' receipt of the consumer report from the employer."). *See also Megallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625 (D.Or. Nov. 10, 2015).

Plaintiff alleges that rather than sending her a pre-adverse action notice, it was Defendant's routine practice to send a post-adverse action notice informing her that she had already lost her employment. Declaration of Devin H. Fok, ("Fok Decl."), Ex. 1. The notice was a template letter which provided in part: "We regret to inform you that we have found it necessary to reject your application for employment. This action was influenced by information in an authorized consumer report…." *Cf.* Fok Decl., Ex. 2.

The FAC alleges that Defendant did not provide Plaintiff with any opportunity to review and dispute the inaccurate information disclosed in her report before Defendant took adverse action on the basis of the report. FAC ¶¶32, 33. Formal discovery including Rule 30(b)(6) deposition testimony revealed that prior to Defendant's implementation of a new system on or about April 28, 2014, Defendant uniformly sent only the template post-adverse action letter. After the lawsuit began and after Defendant's implementation of the new system, Defendant began sending "inquiry letters" to allow applicants to dispute and explain the adverse information disclosed in the consumer report. Fok Decl., Ex. 3.

In this type of cases, the damages are hard to calculate as many consumers may have been subject to accurate background check reports regardless of whether pre-adverse action notices were provided. Analysis of the data base revealed that during

the class period, 19,607 distinct background check reports were procured and only 29 were disputed. Accordingly, under the FCRA, Congress authorized a statutory penalty of $100 to $1,000 upon proof of a willful FCRA violation. 15 U.S.C. §1681n. The subject settlement is well within the range of the authorized penalty and is therefore "fair, reasonable, and adequate."

## III.   THE LITIGATION AND SETTLEMENT OF THE ACTION

### A. The Previous Claim-In Settlement

Plaintiff initially filed her Class Action Complaint in Alameda County Superior Court (Superior Court Case Number: RG13707606) on December 20, 2013. Defendant removed the action to this Court on February 19, 2014. Defendant also maintained that it "did not maintain a record-keeping system or database" of consumers who were not hired based on information disclosed in their consumer reports. Because of the perceived difficulty in ascertaining the class, the parties initially entered into class-wide settlement comprised of:

> All natural persons residing in the United States, who within five years prior to the filing of the action through the date of Preliminary Approval, were the subject of a consumer report prepared at the request of Frito-Lay for employment purposes, and who received a "flag" from LexisNexis.[3]

To determine who, among these class members were actually not hired because of their consumer reports, the class members were required to self-identify and complete a claim form certifying that they were not hired because of a consumer report. They would know this because they would have received a post-adverse action notice similar to the one sent to Plaintiff. The class would share in a common fund of $259,000 inclusive fees and costs. Any remaining undistributed funds would

---

[3] Subsequently purchased by FADV.

be forwarded to United Way as a *cy pres* recipient. Built into the settlement was "blow-up" provision where, if the actual class size is more than 3% over the estimated class size, Plaintiff can rescind the settlement.

Prior to the preliminary approval hearing, a dispute regarding the class size arose. Moreover, at the hearing, this Court expressed skepticism over the claim-in process and questioned how consumers can self-identify whether they were denied employment on the basis of information disclosed in a consumer report. This Court was also concerned about the appropriateness of United Way as a *cy pres* recipient and whether its mission was related to the goal of the subject class action. The parties acknowledged the Court's concerns and began discussing a settlement where the Court's concerns would be addressed.

### B. <u>Formal Discovery</u>

Plaintiff recommended formal discovery to determine the class size and to ascertain the identity of the class members so as to allow a claims-paid process. Over the course of the next several months, the parties engaged in significant discovery, including multiple depositions, several rounds of written and formal discovery, third-party subpoenas, and the exchange of hundreds of thousands of lines of data. SA, P. 8, ¶III.

Specifically, multiple databases were obtained from Defendant as well as Defendant's background check vendor FADV. These databases were also cross-referenced with databases obtained from Defendant's applicant tracking system vendor HRMC. Hundreds of attorney hours were spent on discovery including extensive meet and confer as well as motion practice.

Plaintiff also retained a database expert to analyze the data. Following review of multiple databases, Plaintiff was able to ascertain that 2,897[4] individuals who were denied due the information disclosed in their consumer reports. *Id.* To assist in the complete identification of all class members, Defendant also sent a company-wide email requesting its human resource personnel in its various branches to identify additional class members whose' applications were not captured in its applicant tracking system. As a result of this search, 31 additional class members were identified. Thus, the total class size in this case is now 2,928. *Id.*

## IV. THE PROPOSED SETTLEMENT

### A. Outline of the Settlment

- Defendant to pay $950,000 into common fund. SA, P. 6, ¶II.J.
- This is inclusive of attorney's fees, costs, expenses, and a service award to the Named Plaintiff will be deducted from this fund. SA, P. 6, ¶II.K.
- No reversion. SA, P. 6, ¶II.L.
- Defendant will provide to class administrator a class list including the most current address, phone number, email address if available, and social security number. SA, P. 22, ¶VIII.7.c.
- Class administrator will verify addresses through USPS National Change of Address database; if no known or valid address, skip-tracing will be

---

[4] For the purpose of class certification motion, Plaintiff's expert identified 2,893 unique class members exclusively from a database made available by Defendant's applicant tracking system vendor. When negotiating a settlement with Defendant, however, additional sources were used, including Defendant's own compilation and a database from Defendant's background check company. After removing duplicates, Plaintiff identified 4 additional members, marginally increasing the class size to 2,897.

used based on the member's social security number. SA, P. 25, ¶VIII.10.d.2.

- A notice packet including the attached long form and short form as well as opt-out notice will be sent to class members within 30 days of preliminary approval. SA, P. 25, ¶VIII.10.d.2.
- Checks will be mailed directly to class members within 30-days of final approval. SA, P. 26, ¶VIII.10.e.
- Any uncashed checks after 60 days will be eligible for a second distribution provided that each check to be sent is equal to or more than $5.00. SA, P. 26-27, ¶VIII.10.e.
- Any undistributed funds will be distributed *cy pres* to the National Consumer Law Center, a non-profit organization. SA, P. 27, ¶VIII.10.e.
- Plaintiff will petition the court for reimbursement of reasonable costs and expenses as well as up to 33 1/3% of the settlement fund as attorney's fees. SA, P. 20, ¶VIII.6.
- Plaintiff will seek up to $10,000 as a discretionary service award to be paid directly to Named Plaintiff. *Id.*
- Class members will have 45 days from the mailing of the notice packets to opt out or object. SA, P. 25, ¶VIII.10.d.2; P. 27-28, ¶VIII.f.
- Anybody who does not opt out will be bound by the settlement, which releases all claims which could have been asserted based on the facts as alleged in the complaint during the class period. SA, P.14-15, ¶VIII.3.(a).

//
//
//
//
//
//

## B. **Class Definition**

Because the actual class size is ascertainable and has been ascertained, the parties amended the class settlement definition from their previous settlement. The amended settlement class definition is as follows:

> All individuals residing in the United States who were the subject of a consumer report obtained by Frito-Lay for employment between December 20, 2011, and February 28, 2014 and (1) for whom a disposition of "Background Check Review – Fail" or "Criminal Background Fail" was entered into Frito-Lay, Inc.'s applicant tracking system; and/or (2) whose report was updated following a dispute with Frito-Lay's background check vendor; and/or (3) whose applicant file includes  a letter or letters sent to the applicant on the basis of the applicant's failure of pre-employment background check.

SA, P.6, ¶H.

The parties believe that this definition captures the universe of the consumers who applied to Frito-Lay employment, was not hired because of information in their background check reports and is reasonably ascertainable through Defendant's electronic and/or physical records.

As more fully set forth in Plaintiff's motion for class certification, Defendant had a policy of requiring its human resource personnel to select the "Background Check Review – Fail" drop-down box whenever an applicant  was denied employment due to information disclosed in a background check report. Accordingly, if such an entry was made in Defendant's applicant tracking system, we know with relatively certainty that the associated consumer was not hired based on information disclosed in his or her background check report.

If the appropriate drop-down box was not selected, class members could further be identified through review of their paper records. Because Defendant maintained a practice of sending post-adverse action notices to applicants including a copy of their consumer report, the existence of such notice in the applicant's employment files readily demonstrate that the applicant was denied employment on

the basis of the information disclosed in the consumer report. Moreover, the dispute of any information in a Frito-Lay consumer report readily demonstrates that the applicant received a copy of the report from Frito-Lay which was sent only with the adverse action notice. Accordingly, regardless of whether a copy of the letter is contained in the applicant's physical records, the applicant who disputed his or her report would have likely been denied employment due to a background check report.

Following formal discovery, Plaintiff also discovered that Defendant's record keeping processes both electronic and physical were much more extensive after 2011. Accordingly, the parties agree that the two-year class is more appropriate than the previous five-year class.

### C.     Claims-Paid Class Distribution

Payment to the class is to be made from the common fund. After deduction of attorney's fees, expenses, and service award, all remaining funds will be distributed pro-rata to the 2,928 class members. Within seven days after Preliminary Approval, Defendant will provide the Settlement Administrator with the class members' name, most current mailing address and telephone number, email address (if available), and social security number. SA, P. 22, ¶VIII.7.c. The addresses of these class members will be checked and updated against the USPS National Change of Address database. SA, P. 25, ¶VIII.10.d.2. For any class members without a valid mailing address, the administrator will proactively use skip-tracing based on the class member's social security number to ascertain their most current address. *Id.*

A Notice Packet to opt out of, or object to, the settlement will be sent to verified addresses. Any class members who does not opt out of the settlement will be entitled to a check in an amount equal to the pro-rata distribution from the common fund minus the deductions as outlined above. SA, P. 19, ¶VIII.5.b.ii.

The checks will remain valid and negotiable for sixty days from the date of issuance. SA, P. 19, ¶VIII.5.b.iii. A second distribution will be made for any uncashed checks provided that the class members' share of the second distribution equals or exceeds five dollars. SA, P. 19, ¶VIII.5.b.iv. Any further uncashed checks shall be distributed *cy pres* to the NCLC. SA, P. 20, ¶VIII.5.b.v.

**C. Attorney's Fees and Expenses and a Service Award to the Class Representative**

The Settlement Agreement provides that Class Counsel may move for the Court to award attorney's fees, costs and expenses to be paid from the Gross Settlement Fund. The Fees Award is in an amount not to exceed 33 and 1/3% of the Settlement Fund or $316,666.67. SA, P. 20, ¶VIII.6. This amount is less than the Plaintiff's counsel's current lodestar.

Class Counsel may also petition this Court on behalf of the named Plaintiff an incentive award in an amount not to exceed $10,000.00. SA, P. 21, ¶VIII.6.

**D. *Cy Pres* Recipient**

The parties have designated NCLC as the *cy pres* recipient. The NCLC is a nationwide non-profit organization that is dedicated to a wide range of consumer-side issues including issues related to employment background check. Its practice consists mainly of policy advocacy and frequently holds conferences on consumer issues including issues related to background screening and the FCRA.

In 2012, it published a study detailing the prevalence of background check errors and how it has harmed workers and business. *Nat'l Consumer Law Ctr., Broken Records: How Errors by Criminal Background Checking Companies Harm Workers and Businesses* (Apr. 2012) available at https://www.nclc.org/images/pdf/pr-

reports/broken-records-reports.pdf. The NCLC also author treatises and attorney practice manuals including treatises on the Fair Credit Reporting Act. A *cy pres* award to this organization will advance consumer protection including protection of the rights of workers under the FCRA.

## V.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Rule 23 allows courts to conditionally or provisionally certify a class for purposes of effectuating a settlement. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.,* 55 F.3d 768, 793-94 55 F.3d 768 (3rd Cir. Apr. 17, 1995); *White v. Experian Info. Solutions, Inc.*, 803 F. Supp.2d 1086, 1094 (C.D. Cal. July 15, 2011) ("Where, as here, 'the  parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.'"). To certify a class, the court must find that the prerequisites of Rule 23(a) are met, and that the case falls within at least one of the categories listed in Rule 23(b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. June 9, 1998); *Legge v. Nextel Communications, Inc.*, CV 02-8676-DSF (VNKX), 2004 WL 5235587, *1 (C.D. Cal. June 25, 2004). The same standards generally apply where certification is sought for settlement purposes only, although issues of manageability at trial are not relevant. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (June 25, 1997). Both Rule 23(a) and Rule 23(b) are satisfied here.

### A. Rule 23(a) Requirements

Under Rule 23(a), one or more persons may sue as representative parties on behalf of a class if: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims

or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the intersts of the class. Fed. R. Civ. P. 23(a).

### a. <u>Numerosity</u>

A class action can only be maintained where "the class so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Legge*, 2004 WL 5235587 at *4. But "[t]here is no absolute number at which joinder becomes impracticable. *Legge*, 2004 WL 5235587 at *4 (citing *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L.Ed.2d 319 (1980)). Generally, a class size of approximately 40 members has been held to meet the numerosity requirement. *See, e.g., Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated and rem'd on other grounds*, 459 U.S. 810 (1982) ("we would be inclined to find the numerosity requirement in the present case satisfied solely on the basis of the number of ascertained class members, *i.e.*, 39, 64 and 71"); *Ashmus v. Calderon*, 935 F.Supp. 1048, 1064 (N.D. Cal. 1996) (certifying a class of 52 members). Since there are 2,928 class members, the numerosity requirement is easily met.

### b. <u>Commonality</u>

Under Rule 23(a)(2), a class must have sufficient commonality, which "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L.Ed. 2d 374 (June 20, 2011) (quotation omitted). This requirement is construed "permissively." *Legge*, 2004 WL 5235587 at *5 (*citing Hanlon*, 150 F.3d at 1019). Commonality is evaluated as to whether the complaint truly "is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551.

"[C]ommonality is often found in consumer fraud and related actions where standardized documents and procedures are used. This is true for violations of FCRA and ECOA." *Legge,* 2004 WL 5235587 at *5 (citing *Clark v. Experian Info. Solutions, Inc.*, 2002 U.S.Dist.LEXIS 20410, *11 (D.S.C. June 26, 2002) common questions predominate in FCRA action, including whether a "particular practice or policy of writing credit reports" was reasonable.)). Here, every Class member's claim stems from Defendant's alleged failure to provide them with a pre-adverse action notice prior to taking adverse action based on a consumer report in violation of the FCRA. 15 U.S.C. §1681b(b)(3)(A).

Commonality has been found in two virtually identical cases including claims for failure to provide pre-adverse action notice. *Reardon v. Closetmaid Corp.,* 2011 U.S.Dist.LEXIS 45373, at *14 ("Here, there are numerous questions of law or fact common to the class. These include, but are not limited to….whether [defendant] relied on derogatory information in consumer reports to deny employment to the sub-class members in violation of the FCRA…"); *Singleton*, 976 F.Supp.2d at 675 (finding common question of "whether [defendant] violated the FCRA by failing to provide employees with copies of their consumer reports and pre-adverse action notice"). *See also Megallon*, *Megallon v. Robert Half Int'l, Inc.*, *supra*, 311 F.R.D. 625 (certifying a class action based on identical claims raised in this litigation); *Thomas v. FTS USA, LLC*, 2016 U.S.Dist.LEXIS 2055 (E.D. Va. Jan. 7, 2016); *Milbourne v. JRK Residential Am., LLC*, 2014 U.S. Dist. LEXIS 155288 (E.D. Va. Oct. 31, 2014); *Manuel v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist.LEXIS 109780 (E.D. Va. Aug. 19, 2015).

//

//

//

### c. **Typicality**

For similar reasons, Named Plaintiff's representative claim satisfies the typicality requirement of Rule 23(a)(3). Typicality and commonality are similar and tend to merge. *Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 157 n.13 (June 14, 1982). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *accord Legge*, 2004 WL 5235587 at *8 ("As a result of the uniformity with which [Defendant] treated its customers, the Plaintiffs' experiences and claims in some ways are typical of those of the class."). In the instant case, Plaintiff contends that each Class Member had an adverse action taken against them based on their consumer report, and that Defendant failed to provide them with a pre-adverse action notice prior to taking adverse action in violation of the FCRA. Rather, Defendant provides them with a post-adverse action notice which is similar to the notice received by Plaintiff. Accordingly, Plaintiff's claims are typical of the proposed class.

### d. **Adequacy of Representation**

To make a determination on adequacy, the Court must evaluate both the Named Plaintiffs and their counsel:

> Resolution of two questions determines legal adequacy: 1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and 2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Hanlon*, 150 F.3d at 1020.

All factors support certification here. There is no conflict of interest that would prevent Named Plaintiff or Class Counsel from representing the proposed Class, and

Named Plaintiff and Class Counsel have vigorously pursued the Class's claims. Class Counsel are experienced class-action litigators who have successfully represented the Named Plaintiff and putative class in this litigation and settlement negotiations. Information about the qualifications of Giradi Keese, the Law Offices of Devin H. Fok, and A New Way of Life Reentry Project are included in the declarations of John A. Girardi, Devin H. Fok, and Joshua E. Kim respectively.

## B. <u>Rule 23(b)(3) Requirements</u>

The Settlement contemplates provisional class certification under Rule 23(b)(3). If the elements of Rule 23(a) are satisfied, then a class action may be certified provided the court finds that certain other requirements under Rule 23(b)(3) are met: 1) questions of law or fact common to class members predominate over any questions affecting only individual members, and 2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R.Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1022.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623. Predominance is similar to, but "far more demanding" than the commonality requirement. *Id.* at 623-24. The predominance requirement is satisfied because common questions present a "significant portion of the case" that can be resolved for all Class members in a single adjudication. *See Gutierrez v. Wells Fargo Bank, N.A.,* 2008 W.L. 4279550, *14 (N.D. Cal. Sept. 11, 2008) (citing *Hanlon*, 150F.3d at 1019-22). As discussed in the commonality and typicality sections above, the most central issue in this litigation is common among all the prospective Class members and the Named Plaintiff. Moreover, it is Plaintiff's contention that the elements of these nearly identical claims could be shown at trial through common evidence regarding

Defendant's alleged policies, procedures and practices for sending pre-adverse action notice.

Additionally, adjudicating the facts presented in this action on a class-wide basis would be superior to alternative methods of adjudication. "The superiority requirement is generally satisfied where there are 'multiple claims for relatively small individual sums.'" *Legge*, 2004 WL 5235587 at *12 (quoting *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. Apr. 11, 2001)). This is because "[w]ithout a class action, the costs of individual litigation as compared to the amount of damages may be prohibitively high," or "the individual plaintiffs' claims are so small that denying class certification would effectively preclude any recovery." *Id.* (recognizing that a class action may not only be the superior method of adjudication of multiple claims with small damages, but may be the only realistic means for class members to adjudicate their claims).

The interests of the Class would not be better served by prosecuting their claims individually. *See* Fed. R. Civ. P. 23(b)(3)(A)-(B). Indeed, a class action is only feasible means by which individual applicants can effectively challenge Defendant's conduct, given the relatively modest size of individual claims under the FCRA, which provides for statutory damages of only $100-1,000 per violation[5], and the vastly

---

[5] While the FCRA does provide for recovery of actual damages, 15 U.S.C. §1681o(a) (actual damages for negligent FCRA violation) and 1681n(a) (actual damages for willful FCRA violation), such damages may only be sought where the damage is result of the violation at issue. *See Caltabiano v. BSB Bank & Trust Co.*, 387 F.Supp.2d 135 (E.D.N.Y. Aug. 8, 2005) (debtor suing credit agencies unable to recover actual damages where loan-rate increase was based on market rate rather than credit report). Class members who perceive they have actual damages as a result of failing to receive pre-adverse action notice may opt-out of the Settlement. This ability to opt-out has been held to sufficiently protect those class members in similar cases. *See Egge v. Healthspan Services Co.,*208 F.R.D. 265, 272 (D. Minn. May 16, 2002) ("[defendant's] alleged concern that individual class members may be able to recover more in individual actions is adequately addressed by use of the Rule 23(b)(3) opt-out procedure.") (quotation omitted); *Macarz v. Transworld Systems, Inc.*, 193 F.R.D.46, 55 (D. Conn. Apr. 18, 2000); *Weber v. Goodman*, 9 F.Supp.2d 163,170, 171

superior resources with which Defendant has to defend itself. It is therefore desirable to litigate the issues in this forum on a class-wide basis. *See id.*, at 23(b)(3)(C).

## C. **The Proposed Settlement More Than Satisfies the Standard for Preliminary Approval**

The proposed Settlement Agreement in this case, which provides for a non-reversionary monetary recovery of $950,000 more than meets the standard for preliminary approval. On a per-class member basis, this settlement is commensurate with settlement of similar FCRA claims. *See Barel v. Bank of Am.,* 255 F.R.D. 393, 402 (E.D. Pa. Jan. 16, 2009) ("The proposed settlement confers $51.96 of value on each class member, which amounts to…52% of the low end of the damages range and 5.2% of the high end of the damages range"); *Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665 (D. Md. Oct. 2, 2013) ($2.5 million FCRA settlement for a claim-in class of 45,668 potential class members); *Hunter v. First Transit, Inc.*, 2011 U.S.Dist.LEXIS 158694 (N.D. Ill. Mar. 15, 2011) ($5.9 million FCRA settlement for more than 143,000 class members); *Brown et al. v. Lowe's Companies, Inc., et al.*, 5:13-cv-00079-RLV-DSC (W.D. N.C. 2016) (FCRA settlement, $35 cash or $50 gift card per class member); *Johnson v. Midwest Logistics Sys.,*2013 U.S.Dist.LEXIS 74201 (S.D. Oh. May 25, 2013) ($452,380 common fund with $260 for each consumer who has been subject to an adverse consumer report; and $1,000 for each consumer who has been subject to an adverse consumer report; and was not hired); *Cf Harris v. U.S.Physical Therapy, Inc.*, 2012 U.S.Dist.LEXIS 111844 (D.Nev. July 18, 2012) ($1,000 each class member for 47-members of the proposed pre-adverse action notice class); *Townsend v. AIM Integrated Logistics, Inc.,* 4:15-cv-00493-KBB (N.D.

(E.D.N.Y. Apr. 17, 1998) (deciding a class action in an FDCPA case where individual claims could hve resulted in recoveries of $1,000 per individual was superior even though the class members would receive no more than $2 in statutory damages for the defendant's FDCPA violation).

Oh. 2015) (automatic payment of $1,000 for 206 class members who were not provided pre-adverse action notice); *Reardon v. ClosetMaid*, *supra*, 2013 U.S.Dist.LEXIS 169821 ($400 to approximately 50 pre-adverse action notice class members after the court granted class certification as to these members).

### a. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

As recounted above, the settlement in this case was reached only after extensive formal discovery and after the filing of a formal motion for class certification. This is clear indicia that the settlement was the result of an arm's length negotiation. "An "initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010); *see also Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiff's claims.").

### b. The Settlement Does Not Grant Preferential Treatment

Preferential treatment is not a concern in this case. The settlement class is for the certification of a single class, with no sub-classes. Every class member will be treated equally, and have an equal opportunity to claim a share of the settlement fund. The settlement does call for a service award for the Named Plaintiff, but the award is subject to the Court's review and approval. Furthermore, the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *See Stanton v. Boeing Co.,*327

F.3d 938, 977 (9th Cir. Apr. 29, 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. Apr. 23, 2009).

### c. **The Settlement Is Adequate and Reasonable**

While the exact amount that each class member will recover is unknown until all checks have been cashed, the gross settlement amount of $950,000 is substantial. Assuming that all class members cash their checks they are entitled to $324.45 before the deduction of attorney's fees, costs, expenses, as well as the discretionary award to the Named Plaintiff.

For a vast majority of the consumers, the adverse consumer report information that formed the basis of the "flags" were accurate. Therefore, Frito-Lay would have been justified in denying employment. In litigation, the consumers whose reports contain accurate adverse information will not be able to recover any actual damages outside of the $100 to $1,000 statutory penalties.

Moreover, the statutory penalty of $100 to $1,000 is available only if Plaintiff can establish willful violation of the FCRA. 15 U.S.C. §1681n(a)(1)(A). If the Defendant's violation was at most negligent, recovery is limited to actual damages. *See* 15 U.S.C. §1681o(a)(1).

Viewed in the context of the litigation risks faced, as well as the substantial delay, and costs that class members would have experienced in order to receive proceeds from an adversarially-obtained judgment, not to mention the judicial resources required, this settlement is in the best interests of the Plaintiff and the Settlement Class members, and should be approved.

### D. **The Court Should Approve Dissemination of the Proposed Class Notice**

With this motion, Plaintiffs have provided two forms of proposed class notice—the short notice to be mailed and the long form notice to be made available on the settlement website and upon request. Fok Decl., SA, Ex. 1 and 2. These proposed notices include all of the information required by Fed. R. Civ. P. 23(c)(2)(B). The Long Form Notice contains details about the definition of the Class, the proposed Class Counsel, the size of the settlement fund, the methodology for opting out of or objecting to the settlement, the potential size of Plaintiff's request for attorney's fees, expenses, and class representative incentive awards, and the date and location of the final approval hearing. This notice program exceeds the requirements of Fed. R. Civ. P. 23, and should be approved.

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request this Court to grant approval to the proposed settlement.

DATED: June 23, 2016                    **DHF LAW, P.C.**

                                        By: ____/s/ Devin H. Fok_____
                                            Devin H. Fok
                                            Attorney for Plaintiff

                                        **DHF LAW, P.C.**
                                        DEVIN H. FOK, Cal. Bar. No. 256599
                                        234 E. Colorado Blvd. Floor 8
                                        Pasadena, CA 91101
                                        Ph: (888) 651-6411
                                        Fax: (818) 484-2023
                                        Email devin@devinfoklaw.com

                                        **A NEW WAY OF LIFE REENTRY PROJECT**
                                        JOSHUA KIM, Cal. Bar No. 257260
                                        9512 S. Central Boulevard
                                        Los Angeles, California 90002

Ph: (323) 563-3575;
Fax: (323)-563-3445
Email: joshua@anewwayoflife.org

**GIRARDI KEESE**
JOHN A. GIRARDI, Cal. Bar No. 54917
V. ANDRE SHERMAN, Cal. Bar No. 198684
1126 Wilshire Boulevard
Los Angeles, California 90017
Ph: (213) 977-0211;
Fax: (213) 481-1554
Email: jgirardi@girardikeese.com
Email: asherman@girardikeese.com

**E-FILING ATTESTATION**

By his signature below, counsel for Plaintiff attests that he has on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document and any document e-filed concurrently herewith.

DATED: June 23, 2016                **DHF LAW, P.C.**

By:    /s/ Devin H. Fok             
     Devin H. Fok
     Attorney for Plaintiff

     234 E. Colorado Blvd. Floor 8
     Pasadena, CA 91101
     Ph: (888) 651-6411
     Fax: (818) 484-2023
     Email devin@devinfoklaw.com