UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE,<br>           Plaintiff,<br>    v.<br>FRITO-LAY, INC.,<br>           Defendant. | Case No. 14-cv-00751-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Re: Dkt. No. 100 |

Pending before the Court is Plaintiff Jane Roe's unopposed motion for preliminary approval of class action settlement. Dkt. No. 100 ("Mot."). After careful consideration of the settlement agreement and the parties' arguments, the Court GRANTS Plaintiff's motion for preliminary approval.

## I. BACKGROUND

### A. Litigation History

On December 20, 2013, Plaintiff filed a class action complaint against Defendant Frito-Lay, Inc. and Does 1-10 in Alameda Superior Court. Dkt. No. 1-2. Plaintiff's initial complaint alleged that Defendant failed to provide notice to prospective and existing employees prior to taking adverse employment actions based on information disclosed in a consumer report. *Id.* Plaintiff asserted violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681b(b)(3)(A) ("FCRA"), and California Labor Code § 432.7(a). *Id.* On February 19, 2014, Defendant removed the action to this Court. Dkt. No. 1. Plaintiff filed a first amended complaint on September 3, 2014, asserting a single claim for violation of the FCRA. Dkt. No. 27.

The parties participated in an initial mediation session with Mark Rudy, Esq., on November 20, 2014. Dkt. No. 31. The parties were unable to reach an agreement, but they

continued to engage Mr. Rudy's services in pursuit of settlement. *Id.*; Dkt. No. 35. On March 3, 2015, the parties informed the Court that they had reached a settlement. Dkt. No. 35. After further lengthy negotiations and several deadline extensions, the parties filed their initial motion for preliminary approval on October 14, 2015. Dkt. No. 53. However, at the November 19, 2015, hearing on the initial motion for preliminary approval, it became apparent that the parties were not in agreement as to the terms of the settlement. Following the hearing, the parties reengaged Mr. Rudy to assist with further settlement negotiations. Dkt. No. 58. In light of the continuing dispute, the Court entered a case schedule on January 5, 2016. Dkt. No. 66. On May 5, 2016, Plaintiff filed a motion to certify a class. Dkt. No. 92.

On May 11, 2016, the parties again notified the Court that they had reached a settlement. Dkt. No. 93. After an additional case management conference, the parties filed the pending motion for preliminary approval of class action settlement on June 23, 2016. Dkt. No. 100.

### B.     Overview of the Proposed Agreement

The parties' Stipulation and Settlement of Class Action Claims ("Settlement Agreement") contains the following key provisions:

<u>Payment Terms.</u>  In full settlement of the claim asserted in this lawsuit, Defendant agrees to pay a gross settlement sum ("GSS") of $950,000. This amount includes payment to individuals who do not opt out of the Settlement Agreement ("Settlement Class Members") for release of their claims, any award of attorneys' fees and costs, an incentive award to the named Plaintiff, and all costs of administration, including settlement administration fees.

<u>Allocation Method.</u> After attorneys' fees, costs, the named Plaintiff's incentive award, and reasonable settlement administration costs are subtracted, the remainder of the GSS ("Payout Fund") will be distributed to the Settlement Class Members equally on a pro-rata basis. All checks that remain uncashed after sixty (60) days will revert to the Payout Fund, and Settlement Class Members who timely cash their initial checks will receive a pro-rata share of the remaining Payout Fund, so long as the pro-rata share meets or exceeds $5.00.

<u>Unclaimed Settlement Funds.</u>  If after the first distribution, the Payout Fund will not result in a second pro-rata payment that meets or exceeds $5.00, the remaining funds will be distributed

*cy pres* to the National Consumer Law Center ("NCLC").  None of the GSS will revert to Defendant.

<u>Attorneys' Fees and Costs.</u>  The Settlement Agreement authorizes class counsel to apply to the Court for an attorneys' fees award of up to thirty-three and one-third percent (33 1/3%) of the GSS.  Class counsel may also apply to the Court for an award of reasonable costs.

<u>Incentive Payment.</u>  The Settlement Agreement provides that class counsel will petition the Court for approval of an incentive payment of no more than $10,000 to the named Plaintiff.

<u>Releases.</u>  Settlement Class Members will release all claims "asserted or that might have been asserted . . .arising out of, relating to, or in connection with all causes of action pleaded or that could have been pleaded based upon the facts asserted in the Action."  Settlement Agreement at 10-11.  The named Plaintiff will release Defendant from all claims in existence prior to the final approval of the Settlement Agreement.  *Id.* at 12-13.

<u>Procedure for Claims and Settlement.</u>  Class members must object to, or opt out of, the settlement within forty-five (45) days of the initial mailing of the notice packet.

<u>Objections.</u>  Any Settlement Class Members may file an objection to the Settlement Agreement.  Settlement Class Members must give written notice of their intention to appear at the Court's settlement hearing.

## II.  CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process.  First, Plaintiff must demonstrate that Rule 23(a)'s four requirements are met:  numerosity, commonality, typicality, and adequacy.  Class certification "is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (internal quotation marks omitted).  Second, Plaintiff must satisfy one of the bases for certification in Rule 23(b).  Here, by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four

1  Rule 23(a) requirements and at least one of the three requirements under Rule 23(b) are met. *See*
2  *Wal–Mart*, 131 S.Ct. at 2551.

### A.   Rule 23(a)(1) — Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The settlement class is comprised of 2,928 members. The Court finds that numerosity is satisfied here because joinder of all the class members would be impracticable.

### B.   Rule 23(a)(2) — Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Under Rule 23(a)(2), even a single common question is sufficient. *Wal–Mart*, 131 S.Ct. at 2556. The question, however, "must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted).

The Court finds that the proposed class satisfies the commonality requirement because, at a minimum, Defendant's alleged policies and practices concerning provision of a pre-adverse action notice as required by the FCRA implicate the class members' claims as a whole.

### C.   Rule 23(a)(3) — Typicality

In certifying a class, a court must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted).

The Court finds that Plaintiff is typical of the class she seeks to represent. Like the members of the proposed settlement class, Plaintiff alleges that Defendant took adverse action

against her based at least in part on a consumer report without providing Plaintiff a pre-adverse action notice.

### D. Rule 23(a)(4) — Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)). Among other purposes, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13.

No evidence in the record suggests that Plaintiff or proposed class counsel have a conflict of interest with other class members. Proposed class counsel have substantial experience prosecuting FCRA and other consumer class actions. Dkt. No. 100-1 ¶¶ 3-13; Dkt. No. 100-8 ¶¶ 4-8; Dkt. No. 101 ¶¶ 5-7. The Court finds that proposed class counsel and Plaintiff have prosecuted this action vigorously on behalf of the class, and will continue to do so. The adequacy requirement is therefore satisfied.

### E. Rule 23(b)(3) — Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at

1022 (citation omitted).

Here, the Court finds that — for purposes of settlement — the common questions raised by Plaintiff's claim predominate over questions affecting only individual members of the proposed class. In particular, Plaintiff alleges that Defendant took adverse action against employees and potential employees based at least in part on a consumer report without providing pre-adverse action notice. Whether these allegations have a basis in fact is a common question that would largely resolve the claims of all class members. While the FCRA provides for the recovery of actual damages, those class members who have potentially experienced actual damages are sufficiently protected by the opt-out process. *See Harper v. Law Office of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2016 WL 2344194, at *5 (N.D. Cal. May 4, 2016); *Gragg v. Orange Cab Co.*, No. C12-0576RSL, 2014 WL 794266, at *3 (W.D. Wash. Feb. 27, 2014). Because Defendant's alleged failure to provide pre-adverse action notice is common to all class members, the predominance requirement is satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires the Court to determine whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* As in *Hanlon*, the alternative method here would require individual resolution of each class member's claims. But given the small value of each claim, it would be "uneconomic" for members to bring individual lawsuits. Taking into account the size of the proposed class and the low incentive to file individual lawsuits, the Court finds that the judicial economy achieved through common adjudication makes a class action a superior method for adjudicating the class's claims.

Finally, while not enumerated in Rule 23, "courts have recognized that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (internal quotation marks omitted); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071, n.4 (9th Cir. 2014) (referring, in dicta, to the "threshold ascertainability test"). "[A] class definition is sufficient if the description of the class is definite enough so that it is administratively feasible for

the court to ascertain whether an individual is a member." *Vietnam Veterans*, 288 F.R.D. at 211 (internal quotation marks omitted).

Courts have considered at least three types of "ascertainability" concerns when determining whether class certification is appropriate: (1) whether the class can be ascertained by reference to objective criteria; (2) whether the class includes members who are not entitled to recovery; and (3) whether the putative named plaintiff can show that he will be able to locate absent class members once a class is certified. *See Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at *3-4 (N.D. Cal. Sept. 18, 2014). The proposed class in this case does not present any of these concerns. The putative class is limited to individuals residing in the United States for whom Defendant requested a consumer report between December 20, 2011, and February 28, 2014, and (1) whose file in Defendant's applicant tracking system contains a disposition of "Background Check Review — Fail" or "Criminal Background Fail"; and/or (2) whose consumer report was updated following a dispute with Defendant's background check vendor; and/or (3) whose applicant file includes at least one letter informing him that he would not receive employment due to a pre-employment background check failure. Settlement Agreement ¶ II(H). Moreover, Defendant will provide the claims administrator with the name, most current mailing address, telephone number, email address (if available), and social security number for each of the 2,928 class members. *Id.* ¶ 8. This information will allow the claims administrator to identify and locate class members with sufficient confidence to satisfy the ascertainability requirement.

### F.     Appointment of Class Representatives and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints her as class representative. When a court certifies a class, the court must appoint class counsel and must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiff's counsel has prosecuted this action by:  (1) investigating class members' potential claims; (2) propounding and reviewing discovery, including hundreds of thousands of lines of data; (3) conducting depositions; (4) filing two motions for preliminary approval of settlement; (5) retaining an expert database analyst in order to analyze Defendant's databases; and (6) participating in prolonged mediation discussions with Mr. Rudy.  Plaintiff's counsel has substantial prior experience prosecuting FCRA and other consumer class actions.  Dkt. No. 100-1 ¶¶ 3-13; Dkt. No. 100-8; Dkt. No. 101 ¶¶ 5-7.  For these reasons, the Court will appoint Devin H. Fok of the Law Office of Devin H. Fok, Joshua E. Kim of A New Way of Life Reentry Project, and John A. Girardi of Girardi Keese as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

### III. PRELIMINARY APPROVAL

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The Ninth Circuit has a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Thus, before a court approves a settlement it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

In general, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026.  But, where parties reach a settlement before class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted).  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of

certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The Court may preliminarily approve a settlement and direct notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . ."). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027.  The Court considers the settlement as a whole, rather than its components, and lacks the authority to "delete, modify or substitute certain provisions." *Id*.  (internal quotation marks omitted).  "The settlement must stand or fall in its entirety." *Id*.

In this case, the factors set forth in *In re Tableware Antitrust Litig* and *Hanlon* weigh in favor of granting preliminary approval of the settlement.

### A.  The Settlement Process

The first factor the Court examines is the means by which the parties arrived at the settlement.  "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted).

Here, the parties reached their settlement after a full day mediation session and almost eighteen additional months of negotiation before an impartial and experienced mediator.  This strongly suggests the absence of collusion or bad faith by the parties or counsel. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *Satchell v. Fed. Express Corp.*, No. 03-cv-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of

an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Furthermore, the parties rescinded an initial settlement agreement once they determined that the terms were no longer reasonable given the class size, Dkt. No. 58, and engaged in substantial additional discovery to ensure that all class members were identified, Mot. at 4-6. This further supports the Court's finding of arm's-length bargaining.

### B. Obvious Deficiencies

The second factor the Court considers is whether there are obvious deficiencies in the Settlement Agreement. The Court finds no obvious deficiencies in the Settlement Agreement.

### C. Preferential Treatment

Under the third factor, the Court examines whether the Settlement Agreement provides preferential treatment to any class member. The proposed plan allocates the Payout Fund to Settlement Class Members equally on a pro-rata basis. All checks that remain uncashed after sixty (60) days will revert to the Payout Fund, and Settlement Class Members who timely cash their initial checks will receive a pro-rata share of the remaining Payout Fund, so long as the pro-rata share meets or exceeds $5.00. Thus, all Settlement Class Members who cash their initial settlement checks will receive an equal settlement amount, and no one will receive preferential treatment. While the Settlement Agreement authorizes Plaintiff to seek an incentive award of up to $10,000 for her role as named plaintiff in this lawsuit, the Court will ultimately determine whether she is entitled to such an award and the reasonableness of the amount requested. The Ninth Circuit has recognized that incentive awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968-69 (9th Cir. 2009).

### D. Whether the Settlement Falls Within the Range of Possible Approval

Finally, the Court must consider whether the Settlement Agreement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.

Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080) (internal quotations omitted). Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *See Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). Although the Court undertakes a more in-depth investigation of the foregoing factors at the final approval stage, these factors inform whether the Settlement Agreement falls within the "range of possible approval."

The Court first considers the class's expected recovery balanced against the value of the settlement offer, taking into account the strength of Plaintiff's case. The Settlement Agreement provides for a GSS of $950,000. Plaintiff's counsel represents that assuming that all class members cash a check, each class member would be entitled to $324.45 before the deduction of attorneys' fees, costs, incentive payment, and administration costs. Mot. at 19. After the deduction of fees, costs, and incentive payment, class members are expected to receive approximately $200.00 each. *See* Dkt. No. 100-6 at 6. Plaintiff argues that this is a fair recovery because class members who did not suffer any actual damages would only be able to recover statutory penalties of $100 to $1,000 each. Mot. at 19. Moreover, Plaintiff contends, class members would not be entitled to these statutory damages if Plaintiff could not establish that Defendant violated the FCRA willfully. *Id.* The Court agrees. As the Court has previously held, any class members who experienced actual damages are protected by the opt-out process. *See Harper*, 2016 WL 2344194, at *5*; *Gragg*, 2014 WL 794266, at *3. Defendant continues to deny all wrongdoing, *see e.g.*, Settlement Agreement ¶¶ VI, VII, and purports to assert no less than twenty-five distinct affirmative defenses to Plaintiff's claims, *see* Dkt. No. 28, which could constitute significant obstacles for Plaintiff at trial. Further, Plaintiff could face obstacles to class certification. Accordingly, the approximately $200.00 recovery is more than sufficient for the

11

1  Court to grant preliminary approval given the merits of Plaintiff's claims.

2  Second, the settlement amount is adequate given the expense, complexity, and duration of further litigation. In order to prevail in this action, Plaintiff would be required to successfully move for class certification under Rule 23, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal. The risks and costs associated with class action litigation weigh strongly in favor of settlement.

The third factor concerning whether class certification can be maintained through trial also weighs in favor of settlement. Certifying a class composed of 2,928 employees and employment candidates presents complex issues that could undermine certification at many different stages of the litigation.

Fourth, the $950,000 GSS, which constitutes about 32.4% of Defendant's potential statutory damage exposure, is reasonable given the stage of the proceedings and the defenses asserted in this action.

Fifth, the parties have undertaken sufficient discovery to inform their view of the reasonableness of the Settlement Agreement. After the Court expressed reservations about the parties' first motion for preliminary approval, the parties recommenced formal discovery, taking multiple depositions, propounding written discovery and third-party subpoenas, and exchanging hundreds of thousands of lines of data. Mot. at 5.

The sixth factor takes into account counsel's experience and their respective views of the Settlement Agreement. The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the class's interests in this action. The Court notes, however, that courts have taken divergent views as to the weight to accord counsel's opinions of a settlement agreement. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). The Court finds that this factor tilts in favor of approval, even though the Court affords only modest weight to the views of counsel.

12

1    Having weighed the aforementioned factors, the Court finds that the Settlement Agreement
2    falls within the range appropriate for preliminary approval.[1]

3    **IV.    PROPOSED CLASS NOTICE AND NOTIFICATION PROCEDURES**

4    The class notice in a Rule 23(b)(3) class action must comport with the requirements of due
5    process.  "The plaintiff must receive notice plus an opportunity to be heard and participate in
6    litigation, whether in person or through counsel." *Philips Petroleum Co. v. Shutts*, 472 U.S. 797,
7    812 (1985).  The notice must be "the best practicable, reasonably calculated, under all the
8    circumstances, to apprise interested parties of the pendency of the action and afford them an
9    opportunity to present their objections." *Id.* (internal quotation marks omitted).  "The notice
10   should describe the action and the plaintiffs' rights in it." *Id.*  Rule 23(c)(2)(B) provides, in
11   relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

17   Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from
18   the class by executing and returning an 'opt out' or 'request for exclusion' form to the court."
19   *Philips Petroleum Co.*, 472 U.S. at 812.

20   Plaintiff proposes Rust Consulting as the settlement administrator for the class.  The Court
21   finds that Rust Consulting is qualified to perform the tasks associated with administering the
22   notice and claims procedures outlined in the Settlement Agreement and therefore approves Rust
23   Consulting as the settlement administrator.  Rust Consulting will, among other tasks, verify class
24   members' addresses, perform any necessary skip-tracing, provide notice, calculate awards, process
25   requests for exclusion and objections, maintain the settlement website, create and staff the toll-free
26   telephone line for class members' questions, and mail class members their settlement awards.

---

[1] The seventh factor does not apply to these facts and the eighth factor is premature at this stage.

The Court finds the proposed notice is satisfactory.  The parties propose that Rush Consulting will mail the Notice Packet, including the Class Notice, to class members by first-class regular U.S. mail within thirty (30) days of preliminary approval.  Prior to mailing the Notice Packet, Rush Consulting will check the mailing addresses provided by Defendant against the U.S.P.S National Change of Address database and perform any necessary skip-tracing.  All class members will have forty-five (45) days from the mailing of the Notice Packet to object or to exclude themselves from the Settlement Agreement.  The Class Notice clearly defines the difference between excluding oneself and objecting to the settlement; it also identifies the date by which a member must object or opt out and the address to which any objections or opt-outs must be sent.  Additionally, the Class Notice explains that an objector can speak at the fairness hearing, if he or she wants to.  The Court finds the mailing of notice to the class is reasonably calculated to notify any interested parties of the action and provides, as required by Rule 23, pertinent information for class members to present objections to the proposed settlement.

The content of the proposed notices includes a definition of the putative class and information about the history and subject matter of the litigation and the settlement.  The notice also provides information for those who want to exercise the following options: (1) opt out of the settlement, (2) remain in the class and object to the settlement, and (3) remain in the class and do nothing.  The notice explains the binding effect of the settlement and a decision to exclude oneself from the settlement.  The notice also indicates that additional information regarding the settlement is available through Rush Consulting and class counsel, and their contact information is provided.

The Class Notice has the following deficiencies.  The table of contents contains track changes for several of the page numbers, which should be removed.  Dkt. No. 100-6, Ex. 5 at 3-4. Under the heading, "How do I know if I'm part of the settlement," there is a typographical error in the first sentence.  *Id.* at 6.  Under the heading, "What does the settlement provide," the second sentence of the second paragraph should clarify that attorneys' fees, costs, incentive payment, and settlement administration costs will be determined "by" the Court.  *Id.*  Under the heading, "How will the lawyers and class representatives be paid," there is a typographical error in the first sentence.  *Id.* at 8.  Further, the Class Notice does not clearly inform class members that, even if

they object, they will not be entitled to be heard at the final settlement hearing unless they have submitted written notice of their intention to appear by the opt-out deadline. *Id.* at 8-9, 10. Also, paragraph 15 should be edited so that objections are not sent directly to the Court. Rather, objections should be sent to the settlement administrator to be compiled and filed in one submission to the Court. Finally, the Class Notice should direct class members not to contact the Court.

## V.   NOTICE OF MOTION AND AWARD OF ATTORNEYS' FEES AND COSTS

The Class Notice informs class members that class counsel "intend to apply to the Court for an award of attorneys' fees, in an amount not to [sic] thirty-three and one-third percent (33 1/3%) of the settlement fund, and documented, customary out-of-pocket expenses incurred during the case." *Id.* at 8. It also provides that class counsel will "seek compensation for the Named Plaintiff in an amount not to exceed $10,000." *Id.*

To enable class members to review class counsel's motion, class counsel shall include language in the settlement notices (1) indicating the deadline for filing the attorneys' fees motion, (2) specifically stating the deadline for any class member objections to the fees motion, and (3) informing class members that the motion and supporting materials will be available for viewing on class counsel's website. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion). That motion shall be filed with the Court and posted on class counsel's website not later than 20 days before class members' objections are due.

## VI.   SETTLEMENT APPROVAL SCHEDULE

The parties are directed to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court along with a proposed order within seven days of the date of this Order.

| Event | Date |
|---|---|
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

### VII. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for preliminary approval of class action settlement. The parties are directed to comply with the instructions provided in this Order.

**IT IS SO ORDERED.**

Dated: August 5, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge